Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/24/2017 08:11 AM CDT

Abbie Knopik, appellee, v.
Douglas D. Hahn, appellant.

Lance Greenwood, appellee, v.
Douglas D. Hahn, appellant.

___ N.W.2d ___

Filed October 17, 2017.    Nos. A-16-1125, A-16-1127.

1. **Judgments: Injunction: Appeal and Error.** A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record.
2. ____: ____: ____. In a de novo review of a protection order, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Statutes: Appeal and Error.** Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

Appeals from the District Court for Merrick County: Rachel A. Daugherty, Judge. Reversed and remanded with directions.

Charles R. Maser for appellant.

Paul A. Clark, of Clark & Curry, P.C., for appellees.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Moore, Chief Judge.

## INTRODUCTION

Douglas D. Hahn appeals from harassment protection orders entered by the district court for Merrick County finding that the ex parte harassment orders entered against Hahn for the protection of Abbie Knopik and Lance Greenwood are to remain in effect until October 26 and November 3, 2017, respectively. Hahn argues insufficient evidence was provided to support issuance of the protection orders. Specifically, Hahn argues his actions did not amount to a course of harassing conduct, a statutory requirement for issuance of harassment protection orders. Finding no such course of conduct, we reverse, and remand with directions to vacate the harassment protection orders.

## BACKGROUND

On October 26, 2016, Knopik filed a "Petition and Affidavit to Obtain Harassment Protection Order" pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2016) against Hahn. This petition was also made on behalf of Knopik's 4-year-old son. On November 3, Greenwood filed a "Petition and Affidavit to Obtain Harassment Protection Order" pursuant to § 28-311.09 against Hahn, arising from the same incident. Greenwood is the fiance of Knopik. Included in both affidavits were descriptions of the alleged harassment that inspired the protection order requests. The incident occurred on October 14, in front of a residence shared by Knopik and Greenwood.

On the same day as the petitions were filed, the court entered ex parte harassment protection orders. The order regarding Knopik also applied to her son. Hahn filed requests for a hearing on the respective protection orders.

A combined evidentiary hearing on both petitions was held on November 14, 2016. Knopik and Greenwood each testified during the hearing. Hahn did not provide testimony or any other evidence. No exhibits were admitted into evidence.

Knopik testified that on Friday, October 14, 2016, at approximately 9:30 p.m., Hahn was walking his dog, an "old black

lab," on the sidewalk in front of Knopik and Greenwood's residence. Hahn had his dog on a leash. Knopik knew Hahn as a neighbor and through church, and she recalled seeing Hahn walking his dog previously. At this time, Knopik was standing on her driveway speaking with another neighbor, an off-duty sheriff in civilian clothes. Knopik and Greenwood received a new dog earlier that day—a 1½-year-old German shepherd, weighing approximately 60 pounds. Knopik's dog was in her front yard, not on a leash. Knopik's son and her 12-year-old cousin were playing outside the residence.

As Hahn and his dog walked in front of the residence, Knopik's dog approached Hahn's dog. Knopik called her dog, but he did not respond. This was the first time Hahn encountered Knopik's dog. Knopik testified that the dogs were not aggressive and were simply "sniffing" each other. She grabbed her dog by the collar to coax and lead him away. Knopik testified that her dog "was never out of control." According to Knopik, Hahn leaned closely toward the shorter Knopik, began yelling aggressively, threatened to bring a lawsuit against her for not having the dog on a leash, and called her a "bitch." Knopik told Hahn "to get out of [her] face" and led her dog away. Knopik testified that when she turned around to walk away, Hahn followed her onto the property and called her names. Knopik confirmed Hahn's actions caused her to be fearful for her safety. She was also worried about getting her son inside, and she was fearful for his safety.

At this time, Greenwood spoke up and told Hahn "'you will not speak to my fiancee that way.'" Greenwood was standing next to the garage, at least 30 feet from Hahn. Greenwood described Hahn's demeanor as "hot-tempered" during the incident, explaining that Hahn was "[y]elling profanity at [Knopik], talking in a loud manner, [and] threatening with that lawsuit." Greenwood confirmed being fearful for Knopik's safety.

Hahn told Greenwood that their dog should be on a leash, to which Greenwood responded, "'[g]et your cats on a leash'

just in a joking ma[nn]er." Knopik said Hahn responded, "'I'm sick of your f-ing cocky attitude,'" charged across the driveway toward Greenwood, grabbed Greenwood by the sweatshirt, and punched him in the chest three times. Greenwood described the punches as aggressive, leaving marks or bruises. Greenwood testified that pictures were taken of the injury, but they were not offered or admitted into evidence at trial. Knopik testified that the other neighbor with whom they had been speaking yelled and "said to knock it off or to get out of here." Hahn then left with his dog, walking to his residence. There were no further interactions between the parties that evening. The incident lasted between 10 and 20 minutes. Greenwood testified that no prior, similar incidents occurred between the parties.

Following the testimony, the court found that Knopik and Greenwood established a prima facie case. The court then found by a preponderance of the evidence that "[Knopik and Greenwood] have shown a course of conduct intended to intimidate them which served no useful purpose." Specifically, the court found the following course of conduct: "The argument between . . . Knopik and . . . Hahn, the calling of . . . Knopik of names of profanity, the turning or following her after she had turned away, the continuing calling of names to her, the rushing of . . . Greenwood, and the punching of . . . Greenwood." The court continued the ex parte protection orders as previously entered for a period of 1 year.

On November 14, 2016, the district court entered harassment protection orders declaring that the ex parte harassment protection orders issued on October 26 and November 3 shall remain in effect for a period of 1 year from the date of the respective original orders.

Hahn subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

Hahn assigns, restated, that the district court erred in finding sufficient evidence to support ordering the ex parte harassment protection orders to remain in effect for 1 year.

## STANDARD OF REVIEW

[1,2] A protection order is analogous to an injunction. Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014); *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013).

## ANALYSIS

Harassment protection orders are issued pursuant to § 28-311.09, which provides in relevant part:

> (1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order . . . . Upon the filing of such a petition and affidavit in support thereof, the court may issue a harassment protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner.

The purpose and terms of § 28-311.09 are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2016), which provides in relevant part:

> (1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint

on their personal liberty and which will not prohibit constitutionally protected activities.

(2) For purposes of sections 28-311.02 to 28-311.05, 28-311.09, and 28-311.10:

(a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose;

(b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

Hahn's primary argument on appeal is that the conduct described by Knopik and Greenwood does not fit within the statutory definition of "[c]ourse of conduct." Hahn emphasizes that this was an isolated, one-time incident, occurring over a short period. He argues that the statutes envision a course of conduct akin to stalking and that they do not apply to situations such as occurred in the present case.

Knopik and Greenwood in turn argue that Hahn's actions qualified as a "series" of separate acts rather than one singular incident, which acts occurred "over a period of time," lasting 10 to 20 minutes. They further assert that Hahn displayed a "continuity of purpose" of using violence and aggression to express anger that the dog was not on a leash. Further, Knopik and Greenwood point to the statutory language that acts over a period of time, "however short," may amount to a course of conduct.

Upon our de novo review of the record, we conclude that the district court erred in finding sufficient evidence to support issuance of the harassment protection orders to remain in effect for 1 year. While Hahn's behavior was admittedly unsavory, it did not amount to a harassing "[c]ourse of conduct" as defined by § 28-311.02(2)(b) and applied through precedent.

[3] Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Schuyler Apt. Partners v. Colfax Cty. Bd. of Equal.*, 279 Neb. 989, 783 N.W.2d 587 (2010). Section 28-311.02(2)(b) expressly provides that harassment requires a course of conduct, which is defined in part as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." Further, the legislative intent articulated within § 28-311.02(1) is that the harassment protection statutes are meant to address "stalking offenses."

The testimony offered at trial reflected the incident with Hahn occurred within a span of 10 to 20 minutes on one particular day. No evidence of harassment prior to or after the confrontation was presented. In finding that Hahn's actions amounted to a course of conduct, the district court split this singular, short-term incident into separate acts. While we recognize that the definition of "[c]ourse of conduct" under § 28-311.02(2)(b) refers to a series of acts over a period of time, "however short," we ultimately conclude that Hahn's conduct did not amount to harassment as set forth in the statutes.

Nebraska courts have found harassment protection orders to be appropriate when the perpetrator stalks, follows, detains, restrains, or otherwise harasses the victim on several separate occasions. See, *State ex rel. Counsel for Dis. v. Lopez Wilson*, 262 Neb. 653, 634 N.W.2d 467 (2001) (harassment protection order granted after multiple occasions of harassment by attorney); *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014) (harassment protection order granted as result of continual harassing conduct by former boyfriend). See, also, *Linda N. v. William N.*, 289 Neb. 607, 615, 856 N.W.2d 436, 444 (2014) (stalking defined "to mean 'the extensive, ongoing, and escalating nature of . . . conduct' showing intent to intimidate the victim"); *In re Interest of Jeffrey K.*, 273 Neb. 239, 728

N.W.2d 606 (2007). On the other hand, this court has affirmed the dismissal of an ex parte harassment protection order by the district court due to insufficient evidence that the defendant engaged in an intimidating course of conduct. See *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013). In addition, appellate courts have reversed, and remanded the cause with directions to vacate harassment protection orders where there was insufficient evidence to satisfy the statutory definition. See, *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015); *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010); *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

In the present case, there was insufficient evidence to show that Hahn engaged in the type of stalking offense for which the statutes provide relief. The evidence did not show a knowing and willful course of conduct, evidencing a continuity of purpose; a series of acts of following, detaining, restraining the personal liberty of, or stalking Knopik or Greenwood; or telephoning, contacting, or otherwise communicating with them. Although Hahn's actions reflect a perhaps exaggerated response to an unrestrained dog, they do not constitute the type of stalking offense necessary to support issuance of a harassment protection order.

## CONCLUSION

Because there was insufficient evidence to support issuance of the protection orders, the district court erred in ordering that the ex parte harassment protection orders against Hahn remain in effect until October 26 and November 3, 2017. We reverse, and remand with directions to vacate the protection orders.

Reversed and remanded with directions.