Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/31/2019 08:06 AM CDT

- 268 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

Robert M. on behalf of Bella O.,
a minor child, appellee, v.
Danielle O., appellant.
___ N.W.2d ___

Filed May 31, 2019.    No. S-18-818.

1. **Protection Orders: Injunction: Appeal and Error.** A protection order
   pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018) is analogous
   to an injunction. Thus, the grant or denial of a protection order is
   reviewed de novo on the record. In such de novo review, an appellate
   court reaches conclusions independent of the factual findings of the trial
   court. However, where the credible evidence is in conflict on a material
   issue of fact, the appellate court considers and may give weight to the
   circumstances that the trial judge heard and observed the witnesses and
   accepted one version of the facts rather than another.
2. **Protection Orders.** Whether domestic abuse occurred is a threshold
   issue in determining whether an ex parte protection order should be
   affirmed; absent abuse as defined by Neb. Rev. Stat. § 42-903 (Cum.
   Supp. 2018), a protection order may not remain in effect.
3. **Protection Orders: Words and Phrases.** Not only is the recipient or
   target of a credible threat a "victim" of abuse eligible for a domestic
   abuse protection order under Neb. Rev. Stat. § 42-924 (Cum. Supp.
   2018), so too are those family members for whose safety the target rea-
   sonably fears because of the threat.

Appeal from the District Court for Sarpy County: Patricia
A. Freeman, County Judge. Affirmed.

Darren J. Pekny and Annie E. Mathews, of Johnson &
Pekny, L.L.C., for appellant.

No appearance for appellee.

- 269 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

Danielle O. appeals a domestic abuse protection order obtained by Robert M. on behalf of their daughter, Bella O. Danielle physically attacked two other family members while Bella was present, but did not attack Bella. The trial court determined Danielle's conduct put Bella in fear of bodily injury by means of a credible threat and thus constituted domestic abuse as defined by Neb. Rev. Stat. § 42-903(1)(b) (Cum. Supp. 2018). Although our reasoning differs somewhat from that of the trial court, we nonetheless affirm.

BACKGROUND

Robert and Danielle are the parents of Bella, born in 2007. Robert and Danielle never married. In 2013, a North Dakota court issued an order setting forth Robert's and Danielle's rights and responsibilities concerning Bella. The court granted the parties joint "decision-making responsibilit[ies]" but gave Robert "primary residential responsibility," subject to Danielle's unsupervised parenting time, with the caveat that such parenting time would be supervised if Danielle "has a relapse with regard to alcohol abuse." At the time of these proceedings, Robert lived in Nebraska and Danielle lived in Minnesota. This case arises from an incident that occurred in Minnesota on July 9, 2018, at a duplex Danielle's mother, Nancy O., shared with Danielle's brother, Neill O.

*Petition and Ex Parte Domestic*
*Abuse Protection Order.*

On July 10, 2018, Robert filed a petition and affidavit to obtain a domestic abuse protection order for Bella against Danielle under Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018). The affidavit alleged that on July 9, Danielle and Bella left the duplex to go to a store but were absent from approximately 6

p.m. to 12 a.m. Nancy was unable to reach Danielle or Bella during that time, even though Bella had a cell phone when she left. Nancy told Robert that Danielle took Bella's cell phone away after Nancy attempted to call and text several times and that Danielle refused to tell Nancy where they were. According to Robert's affidavit, Danielle had only supervised visitation rights and was not permitted to take Bella anywhere without supervision due to Danielle's extensive drug and alcohol abuse and criminal history.

Robert's affidavit stated that Danielle returned to the duplex with Bella when Nancy threatened to call the police. Once there, Danielle assaulted Neill and Nancy in Bella's presence, inflicting multiple injuries on Neill's face and body. Danielle also kicked in a door, breaking it off the frame. Bella called Robert and told him she was scared for her safety and for Nancy's safety and that police were on their way. Danielle was arrested for domestic abuse. According to the affidavit, Bella reported to Robert that Danielle "was believed to be" under the influence of drugs and/or alcohol. Robert expressed fear that Danielle would take Bella and not return her.

The matter was assigned to a county court judge, pursuant to § 42-924(2) and Neb. Rev. Stat. § 25-2740(2) (Cum. Supp. 2018). The trial court issued an ex parte domestic abuse protection order on July 10, 2018, generally enjoining Danielle from in-person contact with Bella and from threatening, restraining, or assaulting her.

*Show Cause Hearing.*

Danielle requested a hearing to show cause why the protection order should not remain in effect. See Neb. Rev. Stat. § 42-925 (Cum. Supp. 2018). At the show cause hearing, Robert appeared without counsel and the trial court received his petition and affidavit, summarized above.

Danielle also appeared at the show cause hearing and was represented by counsel. She offered a police report concerning the incident. According to the report, when police arrived,

Bella was running out of the house with Nancy behind. They observed Bella holding onto Nancy, crying, and screaming, "'[S]he is hurting my uncle,'" multiple times. Nancy told police that Danielle was inside, damaging things and fighting Neill. In the duplex, police observed an overturned coffee table and Danielle and Neill engaged in a struggle.

Neill reported to police that Danielle had picked Bella up to go shopping at about 6 p.m. Nancy called multiple times, and Danielle repeatedly said they were 45 minutes away. When Danielle and Bella finally returned several hours later, Bella ran inside the duplex to Nancy. Neill confronted Danielle and attempted to block her access to the duplex. A physical struggle ensued, during which Danielle punched and scratched Neill while he tried to get her out of the residence. Neill estimated that the struggle lasted 20 minutes.

Neill said that at some point, Danielle broke open a door and moved upstairs to where Nancy and Bella were. Neill said that Danielle then "swung on" Nancy and was trying to talk to Bella, but Bella was telling her to leave. Neill told police that Danielle was never abusive toward Bella, but also that Bella was "scared" and that Neill instructed Bella to go downstairs. Neill said that after Bella went downstairs, Danielle followed her and began to throw and damage things. Neill again attempted to restrain Danielle, and police arrived shortly thereafter. They observed scratch marks on Neill's left elbow, red marks below his left eye, a small swollen lump above his right eyebrow, and redness around his neck and ear.

Nancy told the police that Neill tried to get Danielle to leave because Bella was crying. Nancy stated that when she observed Neill struggling with Danielle, who was "swinging, and scratching at Neill's face," she locked a door leading to the upstairs. Danielle then kicked in that door, breaking the doorframe, and went to Bella's room. Nancy reported that Bella told Danielle to leave and that Danielle went downstairs,

- 272 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

started a fight with Neill again, and threw some things. Nancy then called the police, and she and Bella ran outside.

Bella told police that prior to the incident at the duplex, she and Danielle went to a store, but then went to other places that Bella did not expect to go. Bella said that when they returned to the duplex, Danielle "got 'really weird'" and began hitting Neill and hitting and kicking Nancy. Bella said she asked Danielle to leave, because Danielle was "scaring her."

According to the police report, Danielle refused to give a statement to police and was arrested for misdemeanor domestic assault. Police noted that Danielle stated her fingers or knuckles were hurt.

Danielle also testified regarding the incident. She stated that on July 9, 2018, she was exercising her court-ordered parenting time with Bella. Danielle testified that when Bella asked to return to the duplex, Danielle took her there. According to Danielle, Bella had access to Danielle's cell phone when she was with Danielle and Danielle gave Bella the cell phone whenever she asked for it.

Danielle provided relatively little testimony about the physical confrontation at the duplex. She did not take issue with the description of the incident in the police report she offered into evidence, and she specifically agreed with the statement in the report attributed to Neill that Danielle was never abusive toward Bella. She also testified that she did not make any threats toward Bella and presented evidence that she was not under the influence of drugs or alcohol at the time of the incident.

*Trial Court's Ruling.*

At the conclusion of the evidence, the trial court ruled that the protection order would remain in place. In explaining its ruling on the record, the trial court referenced the evidence that Danielle attacked Neill and Nancy and threw objects in Bella's presence and that Bella was scared. It concluded that because Danielle's behavior showed a "pattern of conduct to

suggest a credible threat," the protection order should remain in place. The trial court subsequently entered a written order affirming the ex parte domestic abuse protection order.

Danielle appeals.

## ASSIGNMENT OF ERROR

Danielle assigns that the trial court erred in finding that her actions constituted abuse within the meaning of § 42-903.

## STANDARD OF REVIEW

[1] A protection order pursuant to § 42-924 is analogous to an injunction. Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

## ANALYSIS

*Statutory Background.*

[2] Before proceeding to Danielle's arguments, we briefly review the law governing domestic abuse protection orders. Under the Protection from Domestic Abuse Act (the Act), Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2018), "[a]ny victim of domestic abuse" may seek a domestic abuse protection order. § 42-924. Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. § 42-924. See *Maria A. on behalf of Leslie G., supra.* See, also, *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

- 274 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

For purposes of the Act, "[a]buse" is defined by § 42-903(1) as the occurrence of one or more of the following acts "between family or household members":

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
>
> (b) Placing, by means of credible threat, another person in fear of bodily injury. . . . or
>
> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

Family or household members include persons related by consanguinity, that is, by blood. See, § 42-903(3); *Zimmerer v. Prudential Ins. Co.*, 150 Neb. 351, 34 N.W.2d 750 (1948).

As noted above, the trial court found that Bella was a victim of abuse by determining that Danielle placed Bella in fear of bodily injury by means of a credible threat. The Act defines "credible threat" as follows:

> [C]redible threat means a verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family.

§ 42-903(1)(b).

Danielle contends that Robert did not demonstrate that Bella was a victim of a credible threat under § 42-903(1)(b). She contends that the evidence did not show that her conduct was "aimed" at Bella, that Danielle's actions constituted a threat, or that Danielle made "an implied threat through a 'pattern of conduct.'" Brief for appellant at 9.

*"Target" of Threat.*

We begin with Danielle's position that Bella was not entitled to a protection order because Danielle's conduct was not aimed

- 275 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

at her. On this point, Danielle concedes that she engaged in violent and aggressive behavior toward Neill and Nancy, but contends that none of those actions were directed toward Bella. Danielle asserts that Robert cannot obtain a protection order on Bella's behalf under § 42-903(1)(b) for conduct directed at others.

We agree with Danielle that § 42-903(1)(b) requires a court to determine to whom a threat is directed. In defining "credible threat," the statute provides that the threat must be "made by a person with the apparent ability to carry out the threat so as to cause the person *who is the target of the threat* to reasonably fear for his or her safety or the safety of his or her family." § 42-903(1)(b) (emphasis supplied). As the emphasized language makes clear, credible threats must have a target.

The trial court appeared to conclude that a protection order was justified because Bella was the target of a threat. Danielle disputes that determination, and we acknowledge that evidence that Danielle's actions were directed at Bella is minimal. Neill told police that Danielle was never abusive toward Bella. And while Bella was in the vicinity when Danielle committed acts of violence upon Neill, Nancy, and their property, this record does not show words or actions of Danielle directed at Bella.

[3] That said, we do not believe that § 42-903(1)(b) allows only the target of a credible threat to obtain a protection order. Section 42-903(1)(b) provides that a credible threat includes threats that cause the target to "reasonably fear for his or her safety *or the safety of his or her family*." (Emphasis supplied.) This language contemplates the possibility that a threat will cause the target to fear for the safety of family members. Given this language, we conclude that not only is the recipient or target of a credible threat a "victim" of abuse eligible for a domestic abuse protection order under § 42-924, so too are those family members for whose safety the target reasonably fears because of the threat. Indeed, it would make little sense if a credible threat caused the target to fear for the safety of his or

- 276 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

her family members, but only the target was a victim of abuse eligible to file for a protection order.

Under this view of the statute, Bella did not have to be the target or recipient of a threat in order to be a victim thereof. Bella would also be a victim of a credible threat if Neill or Nancy were the targets of a credible threat that caused them to reasonably fear for Bella's safety and the other elements of a credible threat were present. As we will explain in the sections below, we find that to be the case.

*Threat Implied by Pattern*
*of Conduct.*

Before explaining our reasoning for finding that Neill and Nancy were the targets of a credible threat that caused them to reasonably fear for Bella's safety, we will address Danielle's argument that she did not make an implied threat via a pattern of conduct. Section 42-903(1)(b) allows for credible threats to take various forms—verbal, written, electronic, implied, or some combination thereof. Here, there is no evidence that Danielle made an explicit threat in this case, be it verbal, written, or electronic, so any threat for purposes of the Act had to have been one that was "implied by a pattern of conduct." See § 42-903(1)(b).

We disagree with Danielle that her conduct did not amount to an implied threat. While "credible threat" is defined in the Act, that definition uses the word "threat." See § 42-903(1)(b). "Threat" is not further defined, so our basic principles of statutory interpretation require us to give the word its plain and ordinary meaning. See *State ex rel. Peterson v. Creative Comm. Promotions*, 302 Neb. 606, 924 N.W.2d 664 (2019). The plain and ordinary meaning of "threat" is a "communication, declaration, or expression of an intention to inflict harm or damage." *Clement v. State*, 309 Ga. App. 376, 379, 710 S.E.2d 590, 592 (2011) (collecting dictionary definitions).

We believe that Danielle's conduct communicated an implied threat under this definition. The evidence in the record,

- 277 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
303 NEBRASKA REPORTS
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

particularly the police report, shows that after Danielle arrived at the duplex, she struck or attempted to strike both Neill and Nancy, broke open a door, and damaged other property. Notably, Danielle introduced the police report into evidence and did not take issue with accounts of the incident contained therein. This evidence showed that Danielle actually inflicted harm and damage and acted in a manner that suggested she would continue to do so. We believe these actions communicated an intention to inflict harm or damage and thus amounted to a threat.

We also reject Danielle's argument that the threat was not implied by a "pattern of conduct." Brief for appellant at 12. It is Danielle's position that the term "pattern" requires that an implied threat be communicated by multiple acts, but, she argues, the evidence here is of a single incident. *Id.*

The term "pattern" is not defined in the statute, so, again, we must give the word its plain and ordinary meaning. See *State ex rel. Peterson, supra*. We agree with Danielle that the plain language meaning of pattern requires multiple acts. See, *Colorado Ethics Watch v. Gessler*, 363 P.3d 727, 731 (Colo. App. 2013) (quoting Webster's College Dictionary 991 (1991), defining "'[p]attern'" as "'a combination of . . . acts . . . forming a consistent or characteristic arrangement'"); *La Crosse County v. Mark P.*, Nos. 95-3582, 95-3583, 1996 WL 74401 at *3 (Wis. Feb. 22, 1996) (unpublished opinion listed in table at 200 Wis. 2d 245, 546 N.W.2d 888 (1996)) ("[t]he plain meaning of the word 'pattern' refers to an action which occurs more than once"). See, also, Black's Law Dictionary 1308 (10th ed. 2014) (defining "pattern" as "[a] mode of behavior or series of acts that are recognizably consistent").

But while a pattern of conduct cannot be demonstrated by a single act, we do not view Danielle's actions at the duplex as a single act. As we have noted, Danielle directed violent and aggressive behavior at multiple victims in multiple locations in the duplex and she also broke a doorframe and damaged

other property. We believe Danielle's series of actions at the duplex are sufficient to amount to a pattern of conduct.

In reaching this conclusion, we find distinguishable *Knopik v. Hahn*, 25 Neb. App. 157, 902 N.W.2d 716 (2017), a Nebraska Court of Appeals opinion upon which Danielle relies. At issue in *Knopik* was whether the plaintiffs were entitled to a harassment protection order based on a confrontation in which their neighbor used profane and aggressive language and punched one of the plaintiffs over a 10- to 20-minute time period. The Court of Appeals reversed the entry of a harassment protection order. Danielle contends that her actions did not amount to a pattern of conduct under *Knopik*.

Danielle's argument regarding *Knopik* overlooks, however, that the harassment statutes and the credible threat prong of the domestic abuse statute are not identical. In the harassment statutes, "[h]arass" is defined to be a "knowing and willful course of conduct," and "[c]ourse of conduct" is further defined to be a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." Neb. Rev. Stat. § 28-311.02(2)(a) and (b) (Reissue 2016). Furthermore, the harassment statutes explicitly state that they were enacted to deal with "stalking offenses." § 28-311.02(1). In *Knopik*, the Court of Appeals found that the neighbor had not engaged in the "type of stalking offense necessary to support issuance of a harassment protection order." 25 Neb. App. at 164, 902 N.W.2d at 721-22. We do not read *Knopik* to have turned on whether the neighbor engaged in a single or multiple acts and thus do not believe it supports Danielle's argument that she did not engage in a pattern of conduct here.

### Reasonable Fear for Safety of Bella.

In addition to finding that Danielle made an implied threat via a pattern of conduct, we find that this threat caused the targets or recipients of the threat—Neill and Nancy—to

- 279 -

Nebraska Supreme Court Advance Sheets
303 Nebraska Reports
ROBERT M. ON BEHALF OF BELLA O. v. DANIELLE O.
Cite as 303 Neb. 268

reasonably fear for the safety of Bella. Of course, neither Neill nor Nancy testified at the show cause hearing, so we do not have direct evidence on this question. Having reviewed the record, however, we find circumstantial evidence that leads us to find that it is more likely than not that they reasonably feared for Bella's safety. See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018) (domestic abuse protection order petitioner must establish abuse by preponderance of evidence).

The police report suggests that after Danielle returned to the duplex with Bella, Neill and Nancy were doing their best to keep Bella away from Danielle. This included Nancy's locking the door to the upstairs area of the duplex only to have Danielle kick the door in and go to speak to Bella. The police report indicates that Bella was scared at this point and that Neill told her to go downstairs. Again, Danielle followed her and began to throw and damage items downstairs. Nancy then ran outside with Bella. In addition to their own apparent attempts to shield Bella from Danielle, Danielle's multiple attempts to approach Bella while engaging in reckless and destructive behavior lead us to find it more likely than not that Neill and Nancy feared for Bella's safety. For the same reasons, we find that it was reasonable for Neill and Nancy to do so.

## CONCLUSION

Although we base our analysis on different reasoning, we conclude that the trial court did not err in determining that Bella was a victim of abuse within the meaning of § 42-903. Accordingly, we affirm.

Affirmed.