IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ANDERSEN V. CLARK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KERI M. ANDERSEN, APPELLEE,

V.

RICHARD J. CLARK, APPELLANT.

Filed April 7, 2020.    No. A-19-768.

Appeal from the District Court for Burt County: JOHN E. SAMSON, Judge. Reversed and remanded with directions to vacate.

Heather L. Horst, of Walz Law Offices, P.C., L.L.O., for appellant.

David V. Drew, of Drew Law Firm, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

INTRODUCTION

Richard J. Clark appeals a domestic abuse protection order obtained by his former spouse, Keri M. Andersen. Upon our de novo review of the record, we reverse and remand with directions to vacate the protection order.

BACKGROUND

On June 18, 2019, Keri filed a Petition and Affidavit to Obtain a Domestic Abuse Protection Order in the District Court of Washington County, Nebraska. The petition included both Keri, and the parties' minor daughter, Leah, in the caption and sought protection for both. Keri alleged that the parties had been involved in a divorce case which was then on appeal. Keri alleged that she currently had sole physical custody of Leah, Richard was to have 4 weeks' visitation with Leah during the summer, but that she was "too scared to go." Keri alleged that in July 2018,

- 1 -

Richard parked his truck behind her car and continued to knock on the door for an hour despite being asked to leave. She further alleged that over the July 4th 2018 holiday, Leah did not want to spend a week with her father and despite their agreement that she would only stay with him for two days, he kept her for the entire week. Keri alleged another parenting time dispute occurred in June 2019 when Leah did not want to spend an entire week with Richard.

Keri attached to her affidavit a police statement she gave detailing an incident that had occurred on June 16, 2019. The report included the following statements by Keri. At approximately 10:00 a.m., Richard entered Keri's parents' home. Leah was in the basement and Keri was on the basement stairs. Richard opened the door to the basement stairs. Keri asked Richard to leave several times, but he attempted to go down the stairs. Keri began following Richard down the stairs, when he turned and grabbed both of Keri's forearms, one of which was broken before this incident. Richard squeezed and twisted Keri's arms, resulting in bruising and swelling. Keri visited her doctor the next day and the doctor noticed increased swelling.

Keri's statement further indicated that Leah was in tears and scared that Richard was hurting Keri when she heard Keri yell "my arm." Leah walked up the stairs and Richard eventually grabbed her arm really hard and drug her outside. Once outside, Leah kept rubbing her arm throughout the conversation. Leah indicated that she didn't want to visit Richard for a whole week. Leah's handwritten statement regarding the above was attached to the affidavit. In addition, a statement from Keri's mother was attached which indicated that Keri told Richard to leave, that he grabbed Keri's arm and twisted it at which time she yelled "my arm." This statement also indicated that Richard put his arm around Leah and stated he wanted to talk to Leah, and that Richard grabbed Leah's arm and started to pull her toward the door. Keri asked Leah if she wanted Keri to come with her and Leah said yes.

Keri also attached to her affidavit copies of text messages from Richard to her which she indicated wished her harm. In addition, text messages from Leah were attached stating that she did not want to stay with Richard for a week.

Richard requested a hearing, which was held on July 11, 2019. The court received Keri's petition and affidavit into evidence. Keri also testified about the events on June 16, which was Father's Day. Richard had come to the house to see their daughter. Keri had not allowed Richard to exercise parenting time since Memorial Day. Keri's father let Richard enter the house. When Richard entered the home, he was filming on his cell phone. The parties had been involved in a lengthy divorce proceeding.

Richard testified that he took a video of the event that occurred on Father's Day when he was trying to pick up his daughter. A flash drive from the video on Richard's cell phone was received in evidence. The flash drive consists of two video segments. The first segment is about 40 seconds and the second one is about one minute and 15 seconds. The video was shown during the trial.

The first segment of the video shows Richard waiting outside the door to the house, the door opening, Richard entering the house and greeting Keri's father. Richard asks where Leah is and someone answers that she is in the basement. The video then shows Richard approach a door in the kitchen and Keri opens the door at the top of the stairs. Keri tells Richard to leave the house, that he is not welcome there, and that he is "going to leave [Leah] alone." Keri then attempts to grab or push Richard's phone away. At this time, Richard backed up the stairs. The video does not

depict Richard grabbing Keri's arms or making any threats of physical harm, nor does it include any exclamation from Keri regarding her arm. This segment concludes by showing Keri calmly walking into the kitchen area without any physical difficulty or reference to her arm. Richard states that Keri cannot keep Leah from him and that it is against the court order.

The second segment of the video shows Richard asking his daughter to come outside to talk with him, but does not show him grabbing her arm or pulling her. Keri accompanied Richard and Leah out to the porch at which time a conversation took place among the three of them regarding Richard's parenting time. At no time is there any physical contact or threats made by Richard. The conversation concludes in a calm manner.

Richard testified that he never grabbed Keri's or Leah's arms and that he believed the purpose of the protection order was to prevent him from exercising his parenting time.

Keri's mother testified that Richard walked into her house on the day in question, with a camera going, he started yelling and screaming, and then he grabbed Keri, who had a broken arm. She testified that Leah was scared and upset.

At the conclusion of the hearing, the court found that Keri met her burden of proof because "[Richard] entered [Keri's] residence without permission. Protection order stands."

## ASSIGNMENTS OF ERROR

Richard assigns that the trial court abused its discretion in finding that his alleged actions met the criteria to constitute "abuse" as defined in Neb. Rev. Stat. § 42-903 (Cum. Supp. 2018) and therefore improperly issued a domestic abuse protection order.

## STANDARD OF REVIEW

A protection order pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018) is analogous to an injunction. *Robert M. on behalf of Bella O. v. Danielle O.,* 303 Neb. 268, 928 N.W.2d 407 (2019). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

Richard argues that the district court erred in affirming the domestic abuse protection order because the evidence presented at trial failed to establish that his actions constituted abuse within the meaning of § 42-903. We agree.

Any victim of domestic abuse may seek a domestic abuse protection order. § 42-924. The Nebraska Supreme Court has explained that when an ex parte domestic abuse protection order is issued and the respondent requests a show cause hearing, the inquiry before the district court at the hearing is whether the ex parte order ought to remain in effect after it was in place. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). See, also, Neb. Rev. Stat. § 42-925(1) (Cum. Supp. 2018). Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by

§ 42-903, a protection order may not remain in effect. § 42-924; *Robert M. on behalf of Bella O. v. Danielle O., supra.*

> "Abuse" as used in § 42-903(1) means
>
> the occurrence of one or more of the following acts "between family or household members":
>
> > "(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
> >
> > "(b) Placing, by means of credible threat, another person in fear of bodily injury . . . or
> >
> > "(c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318."

*Robert M. on behalf of Belle O. v. Danielle O.*, 303 Neb. at 274, 928 N.W.2d at 412. Family or household members include persons who have resided together in the past. § 42-903(3). In the present case, Keri and Richard had previously been married and were parties to a dissolution action at the time of the events that led to this protection order.

The district court, in its form order, affirmed the ex parte domestic abuse order and ordered it to remain in effect for a period of one year from June 19, 2019. The district court did not state which subsection of § 42-903(1) was met.

For an order to be issued, a party needs to provide at least some evidence of abuse defined under § 42-903(1). *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). The definition of abuse under § 42-903(1)(a) includes the attempt to cause or to intentionally and knowingly cause bodily injury. While Keri's affidavit and testimony included an accusation that Richard grabbed and twisted her already broken arm, the video introduced into evidence clearly refutes that accusation. Although Keri's attorney suggested at oral argument that the arm grabbing and twisting occurred in between the two video segments, there was no evidence to this effect offered at trial. Thus, § 42-903(1)(a) does not support the entry of a domestic abuse protection order in this case.

Nor does the evidence support entry of a domestic abuse protection under § 42-903(1)(b). The "credible threat" language in § 42-903(1)(b) defining "abuse" for purposes of entitlement to a protection order means that the evidence at trial must include some threat of intentional physical injury or any other physical threat. *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). Name-calling and vulgar language do not rise to the level of abuse. *Id.*

Keri alleged in her affidavit that certain text messages from Richard showed that "he wished her harm." Our review of the text messages from Richard shows they are primarily related to Keri's withholding of parenting time from him and his resulting frustration. While there is some inappropriate language used by Richard, and reference to his hope that "karma" visits Keri, there is nothing in these text messages that include any physical threat by Richard. In fact, at certain points, Richard apologizes for things said in frustration and attempts to invite conversation between the parties about their parenting time difficulties. Richard's text messages do not support a finding of domestic abuse under § 42-903(1)(b) and there is nothing else in the record regarding any other threats of physical harm.

For the sake of completeness, we note that there is nothing in the record to suggest or support entry of a domestic abuse protection order under § 42-903(1)(c).

The only specific finding by the district court was that Richard entered the home without permission. This finding does not lend itself to a finding of physical injury or the threat of physical harm. Further, the record indicates that the June 2019 incident occurred at Keri's parents' home, and it appears from the video exhibit that Richard was allowed to enter the home by Keri's father. After Keri asked Richard to leave, Richard, Keri, and Leah all went outside to the front porch to discuss parenting time.

We recognize that there is affidavit evidence in the record to support Keri's version of the events and to suggest that she was physically injured but the video evidence does not support it. Our standard of review allows us to give weight to the trial judge when credible evidence is in conflict. However, the trial judge did not make any findings with regard to the credibility of the evidence or findings that abuse occurred in this case. In our de novo review, we find that the district court erred in extending the domestic abuse protection order as there was insufficient evidence to support the order.

## CONCLUSION

The district court erred in extending the domestic abuse protection order. We therefore reverse the judgment and remand the cause with directions to vacate the order.

REVERSED AND REMANDED WITH
DIRECTIONS TO VACATE.