IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

JORDAN V. JORDAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ABBEY JORDAN, APPELLEE,

V.

MATTHEW JORDAN, APPELLANT.

Filed May 7, 2024.    No. A-23-772.

Appeal from the District Court for Kearney County: TERRI S. HARDER, Judge. Affirmed.

Nancy S. Freburg for appellant.

John D. Icenogle for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Matthew Jordan appeals the order of the district court for Kearney County entering a modified domestic abuse protection order in favor of his wife, Abbey Jordan. He argues that the evidence presented at the show cause hearing was insufficient to support the entry of the protection order. Based on our de novo review, we find that the district court did not err in entering the modified domestic abuse protection order.

BACKGROUND

On July 26, 2023, Abbey filed a petition and affidavit to obtain a domestic abuse protection order for her and her minor child, A.J. Abbey and Matthew are the biological parents of A.J., and the family lived together prior to these events. In her petition and affidavit, Abbey alleged several events occurred between herself and Matthew that entitled her to a protection order. On July 26, 2023, the court entered an ex parte domestic abuse protection order against Matthew in favor of

- 1 -

Abbey and A.J. Matthew requested a show cause hearing regarding the protection order which was held on September 5, 2023.

Abbey was the only witness to testify at the show cause hearing. Abbey testified to the contents and events described in her petition and affidavit. Specifically, Abbey testified that on July 24, 2023, Matthew began interrogating her regarding an affair she had over 10 years ago. Matthew demanded that Abbey tell him about other affairs she had participated in, but she denied having any other affairs. When Matthew refused to accept Abbey's denial, Abbey made up scenarios, but Matthew still refused to believe her.

The following night, Abbey and Matthew were having the same disagreement in their backyard. Abbey captured an audio recording of this conversation which the court received as evidence. During their conversation, and due to the heat, Abbey removed her shirt. Abbey testified that Matthew threw her shirt, purse, and keys over the fence and retreated into the home. Abbey retrieved her possessions and thereafter attempted to leave the home on foot. She stated she was a block and a half away from the home when she noticed Matthew following her in his truck. Abbey turned down an alley and accidentally stepped into a hole, injuring her leg and her ribs. Photographs of her injuries were admitted into evidence. Matthew accompanied Abbey to the emergency room where her injuries were treated. Afterward, they returned home together.

Abbey testified that on the morning of July 26, 2023, as she was getting ready for work, Matthew grabbed and tore the underwear she was wearing as well as a shirt she was planning to wear. She stated that Matthew also threw her glass of ice water onto the floor, threw her makeup and medications into the garbage, and stained her clothes by throwing a soft drink at her. Abbey further testified that Matthew threatened to punch her for lying to him and that he shoved her. Abbey attempted to leave the home multiple times, but Matthew prevented her from doing so in part by taking her car keys. His efforts at tearing and staining her clothes also impeded her ability to leave. Matthew woke up A.J. and told the child to say goodbye to Abbey because she was "leaving forever." Abbey denied this, informed A.J. that she was simply going to work, and left the home. Abbey filed for a protection order later that day.

At the hearing, Abbey also testified that she was seeking a divorce from Matthew and had filed the paperwork earlier that morning. At the conclusion of the evidence, the court found that "[Matthew had] shoved [Abbey], tore her underwear off, . . . and threaten[ed] to punch her for lying to him." The court ruled that the protection order would remain in effect as it related to Abbey, but that the protection order as it related to A.J. would be dismissed. A modified domestic abuse protection order reflecting these rulings was entered the same day. The court also made modifications as to where and when Matthew could go to certain locations.

Matthew appeals.

## ASSIGNMENT OF ERROR

Matthew assigns that the district court erred in determining that Abbey produced sufficient evidence to grant the modified domestic abuse protection order against him.

## STANDARD OF REVIEW

A domestic abuse protection order is analogous to an injunction. *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019). Thus, the grant or denial of a

protection order is reviewed de novo on the record. *Id.* In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Matthew's sole assignment of error is that the district court erred when it found that there was sufficient evidence to grant the modified protection order against him. Under the Protection from Domestic Abuse Act (the Act), Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2022), "[a]ny victim of domestic abuse" may seek a domestic abuse protection order. § 42-924. For purposes of the Act, "abuse" means the occurrence of one or more of the following acts between family or household members:

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;

> (b) Placing, by means of credible threat, another person in fear of bodily injury . . . ; or

> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

§ 42-903(1). Family or household members include spouses, former spouses, and children. § 42-903(3).

Section 42-925(1) allows a domestic abuse protection order to be issued ex parte under certain circumstances, but such order is temporary, and the respondent may request a show cause hearing. At the show cause hearing, the petitioner must establish by a preponderance of the evidence the truth of the facts supporting their entitlement to relief. See *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). If the petitioner is successful, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. *Id.*

Upon our de novo review, we find that there was sufficient evidence entitling Abbey to a domestic abuse protection order. We acknowledge that Abbey did not offer her petition and affidavit into evidence. However, § 42-925(1) states that "[t]he petition and affidavit shall be deemed to have been offered into evidence at any show-cause hearing," and "shall be admitted into evidence unless specifically excluded by the court." The district court did not exclude the petition and affidavit, and thus, they were deemed offered and admitted as evidence at the September 5, 2023, show cause hearing. We note that Abbey's testimony was consistent with the events reported in her affidavit.

It is undisputed that Abbey and Matthew were married and lived together with their minor child at the time of the events detailed in the evidence. In her petition and in her trial testimony, Abbey discussed the July 2023 incident where Matthew had physical contact with her. She testified that in addition to throwing drinks on the floor and at her, Matthew ripped her underwear off her body and shoved her. Additionally, Abbey testified that Matthew threatened to punch her. These events at minimum supported a finding that Matthew's actions constituted a credible threat which

placed Abbey in fear of bodily injury. These are acts of abuse as defined by the Act. Through her testimony, Abbey established by a preponderance of the evidence that she was entitled to a protection order, and the burden shifted to Matthew to show otherwise.

Matthew presented no evidence to show cause why the protection order should not remain in effect. Abbey was the only witness to testify at the hearing, and Matthew did not provide any opposing or contradicting evidence. Therefore, upon our de novo review, we find that there was sufficient evidence to support the modified domestic abuse protection order issued by the court.

CONCLUSION

Based on the foregoing reasons, we affirm the district court's order entering the modified domestic abuse protection order.

AFFIRMED.