IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


LARR V. LARR


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ALLISON LARR ET AL., APPELLEES,

V.

MARCUS W. LARR, APPELLANT.


Filed May 19, 2026.    No. A-25-560.


Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Steven M. Delaney and Megan E. Shupe, of Reagan, Melton & Delaney, L.L.P., for appellant.

Sarah R. Barnhill, of Barnhill Family Law, P.C., L.L.O., for appellees.


MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

### INTRODUCTION

Marcus W. Larr appeals from the Douglas County District Court's order granting a domestic abuse protection order against him in favor of Allison Larr. We affirm.

### BACKGROUND

*Petition and Order to Show Cause.*

On July 7, 2025, pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2025), now Neb. Rev. Stat. § 26-103 (Cum. Supp. 2025), Allison filed a petition and affidavit for a domestic abuse protection order against her husband Marcus on behalf of herself, the parties' minor child, and Allison's other minor children.

- 1 -

The petition alleged that on June 7, 2025, Allison confronted Marcus about an affair he had been having with a co-worker at his office. During the confrontation, Allison told him to go live with his girlfriend and Marcus punched a hole in the door and ran at Allison. Their 8-year-old daughter jumped in front of Allison and attempted to stop her father, but he pushed her to the ground. Marcus then spat on and "headbutted" Allison. When Allison told Marcus that he hurt her, he told her to shut up and walked into the bathroom. Allison followed him, and he slammed the door on her leg repeatedly, causing her injury. After this, Marcus punched another hole in the wall next to the stairs. Allison then tried to call 911, but Marcus talked her out of it, saying he would lose his job. She attached images of her bruised thigh and eye to the petition and affidavit.

Allison further alleged in her petition that he previously held a gun to his head in front of the children, told Allison he would kill everything she had, kicked her dogs, told the children that Allison should kill herself, punched her son, asked the children to lie, and told her that no one would believe her since he was a police officer.

The court entered an order to show cause and set a hearing for July 16, 2025.

*Motion to Continue and Show Cause Hearing.*

One day prior to the show cause hearing, Marcus filed a motion to continue. The motion was heard on July 16, 2025. Marcus asked to continue the matter as his attorney was out of town when the petition was filed and the day prior was his attorney's first day back in the office. Marcus was also deprived of his phone, which contained evidence he wanted to present to the court. Marcus said he was interviewed by the police and voluntarily gave his phone to them, so they could do a "phone dump." Marcus also stated that since he was a police officer, a protection order would end his career.

The district court overruled the motion. Specifically, the court considered that Neb. Rev. Stat. § 42-925 (Cum. Supp. 2025), now Neb. Rev. Stat. § 26-108 (Cum. Supp. 2025), specifies that a hearing is supposed to be held within 14 days after filing the petition. The court noted its decision reflected the Legislature's determination that a speedy hearing on the petition is generally in the best interests of both parties. The court also said that, given the timeline of events, Marcus was served on July 8, 2025, and the motion to continue was filed on July 15, 2025.

The district court allowed the hearing to proceed. The court received into evidence Allison's petition and affidavit, which contained the previously mentioned allegations of abuse. Allison testified that Marcus was unpredictable and violent. Allison described the events of June 7, 2025, where she testified to their argument about Marcus's affair. She said that after she told him to leave, he turned around and punched a hole in the door. She said the parties' child jumped in front of her and screamed at Marcus, "Daddy, please don't." Allison testified that Marcus pushed their daughter to the ground. Allison stated Marcus headbutted and spat on her. She then said that she followed Marcus into the bathroom, where he slammed the door on her hands and leg.

After this, Allison said she called the police, but Marcus told her to stop because she and the children would lose everything. Allison stated he talked her out of reporting the incident at that time, but that she was terrified. Allison testified that she thought Marcus was going to kill her and that he was angry with her for knowing about his affair with a trainee at his work. Allison said she took photos of her injuries, including her black eye and bruises, which photographs were received in evidence. Allison stated that she waited to make a police report because Marcus held insurance

and money over her. She also testified that he threatened to kill everything she loved, and she did not know how to protect herself.

Allison stated that Marcus was charged with a crime related to the assault, and that their daughter was also named a victim in that criminal case. The court received in evidence the criminal complaint against Marcus. The complaint charged Marcus with one count of domestic assault in the third degree, for causing bodily injury to Allison, one count of child abuse by neglect, and one count of domestic assault in the third degree, for threatening Allison with imminent bodily injury. At the time of the show cause hearing, the court noted the criminal case was still pending. Allison said their daughter asks whether Marcus still loves her or if he is angry with her because she told the police. Allison testified that she was afraid that Marcus would come after her and was worried he would kill her and then kill himself.

Marcus also testified. The court received in evidence photographs of an "Apple Watch" containing numerous text messages with his 15-year-old stepdaughter, the parties' daughter, and Allison. Marcus said that his stepdaughter texted him asking for information on how to drop the charges. Marcus stated that he received messages from the parties' daughter but did not believe the messages sounded like their daughter. Marcus also testified that he communicated with Allison after July 3, 2025. Marcus testified that Allison sent him messages about reconciling and dropping charges.

*District Court's Order.*

Following the order to show cause hearing, the district court granted Allison's petition for a domestic abuse protection order as to Allison, but not to the children.

The court included in its additional findings that (1) it overruled Marcus' motion to continue because he failed to demonstrate good cause or sufficient reason necessitating a continuance and (2) it found Allison testified credibly that Marcus intentionally and knowingly caused her bodily injury on June 7, 2025.

Marcus appeals.

ASSIGNMENTS OF ERROR

Marcus assigns, reordered, that the district court erred by (1) denying his motion to continue trial, (2) granting the domestic abuse protection order because the evidence presented at trial was not sufficient to support such findings, and (3) finding Allison credible.

STANDARD OF REVIEW

An appellate court reviews a judge's ruling on a motion to continue for an abuse of discretion. *State on behalf of Keegan M. v. Joshua M.*, 20 Neb. App. 411, 824 N.W.2d 383 (2012). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id.*

A protection order pursuant to § 42-924 is analogous to an injunction. *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id.* In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may

- 3 -

give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Motion to Continue.*

Marcus claims that the district court erred in denying his motion to continue.

We find no error in the district court's denial of the motion to continue. A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. *In re Interest of Jerel S.*, 320 Neb. 526, 28 N.W.3d 824 (2025).

Marcus' primary reason for asking for a continuance was that the police still had his cell phone, which allegedly contained evidence relevant to the protection order. Marcus argues that his phone contained necessary evidence to defend against the protection order but does not specify what that evidence would be. Marcus did not file the motion until July 15, 2025, the day before the show cause hearing. Marcus also was able to testify about text messages from his phone, as the court received in evidence photographs of text messages on his Apple Watch, including messages from Allison regarding reconciliation.

The court stated in its denial that § 42-925 specified that if the order is not issued ex parte, the court should immediately schedule an evidentiary hearing to be held within 14 days after the filing of the petition. See § 26-108. The court also noted that it took all arguments into consideration but could not find good cause to continue the hearing.

Since it does not appear that Marcus clearly suffered prejudice because of the denial, we therefore conclude that the district court did not abuse its discretion in overruling Marcus' motion to continue the trial.

*Sufficiency of Evidence.*

Marcus argues that the district court erred in granting the domestic abuse protection order because the evidence presented at trial was not sufficient to support such findings.

Whether domestic abuse occurred is a threshold issue in determining whether a protection order should be affirmed; absent abuse as defined by Neb. Rev. Stat. § 42-903 (Cum. Supp. 2025), a protection order may not remain in effect. See *Robert M. on behalf of Bella O. v. Danielle O., supra*. Under the Protection from Domestic Abuse Act, § 42-903, "[a]buse" is defined by § 42-903(1) as the occurrence of one or more of the following acts "between family or household members": "(a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument; (b) Placing, by means of credible threat, another person in fear of bodily injury . . . or (c) Engaging in sexual contact or sexual penetration without consent. . . ." Family or household members include biological parents and persons who have resided together in the past. § 42-903(3).

In this case, the court did not issue an ex parte domestic abuse protection order but rather set a date for a show cause hearing. After the show cause hearing, the court granted Allison's petition and issued a domestic abuse protection order. This means at the show cause hearing, the district court concluded that Allison had provided the court with sufficient evidence that not only

had domestic abuse occurred, but that she was also at risk of future harm, as required by *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

When domestic abuse as defined by § 42-903 has occurred, the language of § 42-925(1), now § 26-109, suggests a wider inquiry in deciding whether to issue a protection order. *Maria A. on behalf of Leslie G. v. Oscar G., supra.* Section 42-925(1) frames the issue as whether a protection order should remain in effect and, thus, orients the court's view toward the future and the goal of domestic abuse protection orders, which is to protect victims of domestic abuse from further harm. See *Maria A. on behalf of Leslie G. v. Oscar G., supra.*

Therefore, in considering whether to continue a domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the order was proper, but may also consider a number of factors pertinent to the likelihood of future harm. See *id.* Those factors might include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships. *See id.*

The petitioner at a show cause hearing has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. *Maria A. on behalf of Leslie G. v. Oscar G., supra.* During the show cause hearing, testimony and evidence was adduced that Marcus intentionally and knowingly caused bodily injury to Allison. Marcus, however, claimed that Allison contradicted herself and that there is a lack of credible evidence regarding past abuse or pending credible threats of harm. On de novo review, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014).

We agree with the district court that Allison met her burden of proof to show she was a victim of domestic abuse by Marcus. Allison's petition and testimony reflected that Marcus caused her injury and that he had previously threatened her. There is sufficient evidence to support the finding that Marcus headbutted Allison, and that afterward Marcus slammed a door on Allison, causing her further injury, as alleged in the petition and affidavit, and Marcus did so knowingly and intentionally. There is also sufficient evidence to support the finding that Allison feared present and future physical harm on June 7, 2025. Allison testified at the show cause hearing that she was worried that Marcus was going to kill her and that he had previously threatened to kill everything that she had loved.

Considering all of this evidence, we find that the record sufficiently shows that Marcus intentionally and knowingly caused bodily injury to Allison as set forth in § 42-903(1)(a), and that evidence shows there was a pending threat of future harm or a pattern of abuse foreshadowing future harm. We conclude that the district court did not err, and there was sufficient evidence to support granting the domestic abuse protection order.

*Finding of Credibility.*

Marcus argues that the district court erred in finding Allison credible.

The district court found that Allison testified credibly that Marcus intentionally and knowingly caused her bodily injury on June 7, 2025. Marcus argues that the assault could not have

occurred the way Allison describes it and that it "contradicts physics." Marcus also argues that because Allison continued to reside with him through the month of June after the assault occurred, she could not have been afraid of him.

The district court was able to hear and review Allison's testimony, the testimony of other witnesses, all exhibits, and the closing arguments of both parties. Based on the court's granting of the protection order, it is clear that the court found that Allison's allegations of Marcus' abuse were believable and that his threats were credible. Ultimately, we give deference to the district court's findings of witness credibility at the hearing. See *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019). Therefore, Marcus' assignment that the district court erred in finding Allison credible fails.

## CONCLUSION

For the foregoing reasons, we affirm the domestic abuse protection order issued by the district court.

AFFIRMED.