IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DARCY V. V. DEWOLF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DARCY V., APPELLEE,

V.

DYLAN P. DEWOLF, APPELLANT.

Filed December 22, 2020.    No. A-20-325.

Appeal from the District Court for Nemaha County: CURTIS L. MASCHMAN, Judge. Affirmed.

Ryan K. McIntosh, of Brandt, Horan, Hallstrom & Stilmock, for appellant.

Darcy V., pro se.

BISHOP, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Dylan P. DeWolf appeals the Nemaha County District Court's April 9, 2020, modified domestic abuse protection order and the order overruling his motion to dismiss. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On January 8, 2020, Darcy V. filed a petition and affidavit to obtain a domestic abuse protection order against DeWolf on behalf of herself and the parties' 5-month-old son. Her petition and affidavit alleged that on December 24, 2019, while Darcy was dropping off the parties' son at DeWolf's apartment, DeWolf became "aggressive and verbally controlling and sexually assaulted me." Darcy alleged that she had this incident on a recording "because I have been afraid lately of [DeWolf's] actions towards me and he is much bigger than I am. I can provide this recording if

- 1 -

needed. My concern at this point is the [safety] of my child and myself." She further alleged that on January 3, 2020, while meeting to exchange the parties' son, she:

> Realized [DeWolf] had no intentions of returning my son to me so I tried to get my son out of their car, but the doors were locked. I asked [DeWolf] and his mother to unlock the door so I could get my son, [DeWolf] told his mom to "go", she started to drive on the highway, as I was trying to get my son out of the car he told his mom to "floor it", she started to drive faster, and the car began to drag me because I was already leaning in to get my son. After being dragged for a bit I became numb and dropped to the ground and that is when she ran over me. She ran the stop sign as seen in the footage. I at some point became unconscious but was told she called the police because there were people there that had witnessed the incident. His behavior has been increasingly abusive. I was encouraged by the police to get a protection order for my son and [myself]. I know that [DeWolf] is angry and I am unsure of what he will do when he sees me again. I am scared for my life and for my son's.

On January 9, 2020, the Nemaha County District Court entered the ex parte domestic abuse protection order on behalf of Darcy and the parties' son. The ex parte order was served on DeWolf on January 25, which was 16 days after entry of the ex parte order.

On January 27, 2020, DeWolf filed a motion to dismiss for lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process. Following a hearing, the court overruled the motion to dismiss. DeWolf then requested a show cause hearing which was held on February 27. At the beginning of the hearing, DeWolf renewed his motion to dismiss which was again denied by the district court. Both Darcy and DeWolf testified at the hearing and the court received into evidence Darcy's petition and supporting affidavit; the ex parte domestic abuse protection order, and the return of service; text message conversations between the parties; a complaint for paternity, custody, parenting time and child support filed by Darcy on December 30, 2019; a temporary order in the paternity case filed on January 26, 2020; and a video recording from DeWolf of the January 3, 2020, incident.

Darcy testified that the events that she included in her petition and affidavit were true and correct. Darcy testified that on the evening of December 24, 2019, she took the parties' son to DeWolf's apartment so that DeWolf could spend Christmas Eve and Christmas morning with their son. Darcy testified that on December 24, DeWolf sexually assaulted her and that she screamed for him to stop but he continued assaulting her. She further testified that as a result of the events alleged in her affidavit, she has to see a doctor and take medication. Conversely, DeWolf testified that during the December 24, 2019, incident, the parties "had the beginnings of sexual interaction," but when Darcy told him to stop, he "[s]topped."

After the first day of the hearing was concluded, Darcy was granted leave to submit a digital recording of the December 24, 2019, incident. DeWolf was granted until March 18, 2020, to review the digital recording submitted by Darcy and to request an additional hearing in the matter. On March 16, DeWolf "request[ed] a further hearing in order to submit objections to the digital recording" which hearing was held on March 31. At the March 31 hearing, DeWolf objected to the digital recording submitted by Darcy in the form of a flash drive on the grounds of relevance, hearsay, and foundation. The court received the flash drive as exhibit 11 over DeWolf's objections.

Darcy's testimony describing unwanted sexual contact after her repeatedly telling DeWolf to "stop" is corroborated by exhibit 11.

Following the March 31, 2020, hearing, the district court entered a modified domestic abuse protection order in favor of Darcy against DeWolf to remain in effect until January 9, 2021, and provided that DeWolf was enjoined and prohibited from imposing any restraint upon Darcy's person or liberty and that DeWolf was enjoined and prohibited from telephoning, contacting, or otherwise communicating with Darcy. The court found that DeWolf did not pose a threat of physical harm to the parties' son; therefore, the modified order did not include their son.

## ASSIGNMENTS OF ERROR

On appeal, DeWolf contends that the district court erred (1) in finding that it had personal jurisdiction over him, (2) in finding sufficiency of process regarding the ex parte order, (3) in finding sufficiency of service of process regarding the ex parte order, and (4) in entering the modified protection order.

## STANDARD OF REVIEW

A domestic abuse protection order is analogous to an injunction. *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019). Thus, the grant or denial of a protection order is reviewed de novo on the record. *Id*. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

### ALLEGATIONS REGARDING PERSONAL JURISDICTION, SUFFICIENCY OF PROCESS, AND SERVICE OF PROCESS

First, DeWolf has alleged that the district court erred in finding that it had personal jurisdiction over him, in finding sufficiency of process regarding the ex parte order, and in finding sufficiency of service of process regarding the ex parte order. Although DeWolf alleged three assignments of error regarding claimed errors by the district court regarding personal jurisdiction, sufficiency of process, and sufficiency of service of process, the argument in his brief is limited to his claim that the protection order was not served within 14 days of its issuance as required by Neb. Rev. Stat. § 42-926 (Supp. 2019).

Accordingly, we will analyze DeWolf's assignment of error governing insufficient service of process. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020) (appellate court will only review matters assigned and argued).

Section 42-926(1) provides:

Upon the issuance of a temporary ex parte or final protection order under section 42-925, the clerk of the court shall forthwith provide the petitioner, without charge, with two certified copies of such order. The clerk of the court shall also forthwith provide the local police department or local law enforcement agency and the local sheriff's office, without charge, with one copy each of such order and one copy each of the sheriff's return thereon.

The clerk of the court shall also forthwith provide a copy of the protection order to the sheriff's office in the county where the respondent may be personally served together with instructions for service. *Upon receipt of the order and instructions for service, such sheriff's office shall forthwith serve the protection order upon the respondent and file its return thereon with the clerk of the court which issued the protection order within fourteen days of the issuance of the protection order.* If any protection order is dismissed or modified by the court, the clerk of the court shall forthwith provide the local police department or local law enforcement agency and the local sheriff's office, without charge, with one copy each of the order of dismissal or modification. If the respondent has notice as described in subsection (2) of this section, further service under this subsection is unnecessary.

(Emphasis supplied.) Because DeWolf was not served with the protection order until 16 days following issuance of the order, DeWolf argues that there was insufficient service of process here, that insufficient service of process must be strictly construed, and that the court erred by failing to grant his motion to dismiss on that basis.

We agree that by failing to serve DeWolf within 14 days of the court's issuance of its protection order, DeWolf was not effectively served with process in accordance with § 42-926(1), however, we do not deem that failure dispositive of this case.

Neb. Rev. Stat. § 25-516.01(2) (Supp. 2019) separately provides:

A defense of lack of personal jurisdiction, insufficiency of process, or insufficiency of service of process may be asserted only under the procedure provided in the pleading rules adopted by the Supreme Court. If any of those defenses are asserted either by motion or in a responsive pleading and the court overrules the defense, an objection that the court erred in its ruling will be waived and not preserved for appellate review if the party asserting the defense either (a) thereafter files a demand for affirmative relief by way of counterclaim, cross-claim, or third-party claim or (b) fails to dismiss a demand for such affirmative relief that was previously filed. If any of those defenses are asserted either by motion or in a responsive pleading and the court overrules the defense, an objection that the court erred in its ruling on any issue, *except an objection to the court's ruling on personal jurisdiction*, will be waived and not preserved for appellate review if the party asserting the defense thereafter participates in proceedings on any issue other than those defenses.

(Emphasis supplied.) In the instant case, each of DeWolf's defenses of personal jurisdiction, sufficiency of process, and sufficiency of service of process, were raised in his motion to dismiss and each defense was overruled by the district court. Thereafter, DeWolf participated in the proceedings on multiple issues other than those jurisdictional defenses, including but not limited to, requesting a show cause hearing and defending against the case on the merits. Pursuant to § 25-516.01(2), these actions waived his defense of sufficiency of service of process which is the sole argument which he now attempts to assert on appeal.

Consequently, because the only issue argued in DeWolf's brief is sufficiency of service of process, and DeWolf waived this defense by participating in the proceedings in the district court on issues other than this defense, his assigned error is not properly preserved for review by this court. DeWolf's first assignment fails.

DeWolf next contends that the district court erred in entering the modified protection order because the evidence did not support leaving the protection order in place. Specifically, he contends that "there was no showing of the likelihood of future harm." Brief for appellant at 12.

Any victim of domestic abuse may seek a domestic abuse protection order. Neb Rev. Stat. § 42-924 (Supp. 2019). The Nebraska Supreme Court has explained that when an ex parte domestic abuse protection order is issued and the respondent requests a show cause hearing, the inquiry before the district court at the hearing is whether the ex parte order ought to remain in effect after it was in place. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018). See, also, Neb. Rev. Stat. § 42-925(1) (Supp. 2019). "Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect." *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 273, 928 N.W.2d 407, 412 (2019).

"Abuse" as used in Neb. Rev. Stat. § 42-903(1) (Cum. Supp. 2018) means the occurrence of one or more of the following acts between family or household members:

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
> (b) Placing, by means of credible threat, another person in fear of bodily injury . . . or
> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

"Without consent" includes where "the victim expressed a lack of consent through words." Neb. Rev. Stat. § 28-318(8)(a)(ii) (Supp. 2019).

Family or household members include persons who have a child in common whether or not they have been married or have lived together at any time. § 42-903(3).

Here, Darcy and DeWolf have a child in common. The district court, in its form order affirmed, as modified, the ex parte domestic abuse order (excluding the parties' son) and ordered it to remain in effect for a period of one year from January 9, 2020. Pursuant to DeWolf's request, a show cause hearing was held. During that hearing, Darcy averred, that on December 24, 2019, DeWolf sexually assaulted her despite her repeated pleas for him to stop. A digital recording of that assault was captured by Darcy and was received into evidence during the hearing. After reviewing the evidence, the district court found that Darcy had met her burden of proving by a preponderance of the evidence that she was entitled to the domestic abuse protection order. See *Maria A. on behalf of Leslie G. v. Oscar G., supra* (domestic abuse protection order petitioner must establish abuse by preponderance of evidence). In our de novo review of the record, we consider and give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Robert M. on behalf of Bella O. v. Danielle O., supra*. After reviewing that record here, we similarly conclude that Darcy met her burden of proving by a preponderance of the evidence that DeWolf engaged in sexual contact with Darcy without her consent which was sufficient to support the entry of the protection order.

Notwithstanding the court's adoption of the initial order, DeWolf assigns and argues on appeal that the evidence adduced at the show-cause hearing was insufficient for the court to find that the initial order should remain in effect for a year following the adoption of the order. Specifically, DeWolf assigns that "there was no showing [at the hearing] of the likelihood for future harm." A similar argument was made in *Maria A. on behalf of Leslie G. v. Oscar G., supra*, wherein the Nebraska Supreme Court framed the issue and discussed considerations governing whether a domestic abuse protection order should remain in effect in holding:

[A]s we will explain, based on the procedural framework of this case and the above-quoted statutory language, the inquiry before the district court was whether the ex parte order ought to have remained in effect once it was in place. See § 42-925(1). In addressing this question, the district court was not guided exclusively by the definition of abuse in § 42-903, as Maria's brief implies, or by whether the ex parte order was permissible at its inception. Instead, the district court could also consider other factors in its determination as to whether the ex parte order should remain in effect to prevent future harm.

As noted above, § 42-925(1) provides, "If the respondent appears at the hearing and shows cause why such [ex parte] order should not remain in effect, the court shall rescind the temporary order. If the respondent does not so appear and show cause, the temporary order shall be affirmed. . . ." (Emphasis supplied.) Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. See §§ 42-903, 42-924, and 42-925. See, also, *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014) (reversing order that affirmed ex parte domestic abuse protection order where respondent's conduct did not meet definition of abuse under § 42-903). But even when domestic abuse as defined by § 42-903 has occurred, the language of § 42-925(1) suggests a wider inquiry in deciding whether to affirm or rescind an ex parte protection order. Section 42-925(1) frames the issue as whether the protection order should remain in effect and thus orients the court's view toward the future and the goal of domestic abuse protection orders, which is to protect victims of domestic abuse from further harm. See Introducer's Statement of Intent, L.B. 310, Judiciary Committee, 102d Leg., 1st Sess. (Jan. 26, 2011). See, also, 25 Am. Jur. 2d Domestic Abuse and Violence § 31 (2014).

Therefore, in considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper, but may also consider a number of factors pertinent to the likelihood of future harm. Those factors might include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships.

*Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. at 680-82, 919 N.W.2d at 847-48.

As it relates to that inquiry, the Nebraska Supreme Court then discussed the burden of proof in connection with inquiries governing extension of the protection order in holding:

Given that domestic abuse protection orders are a species of injunction and given the procedural similarities between § 28-311.09 and § 42-925 as they relate to show cause hearings following ex parte orders, we now apply the burden of proof we articulated in *Mahmood v. Mahmud,* [279 Neb. 390, 778 N.W.2d 426 (2010)]. Such application is in line with the analytical framework set forth above, in which the occurrence of abuse defined by § 42-903 is a threshold consideration in deciding whether to affirm or rescind an ex parte domestic abuse protection order. Accordingly, the petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect. § 42-925(1).

*Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. at 685, 919 N.W.2d at 849-50.

Having previously determined that Darcy established her burden of showing the protection order was warranted, we now turn to DeWolf's claim that there was no showing that a continuation of that order was warranted. We do so subject to the standard that it became DeWolf's burden to show why the protection order should not remain in effect.

At the show-cause hearing, Darcy adduced evidence that the sexual contact or assault was recent and severe and, according to Darcy's testimony, in combination with a later event, required her to go to doctor's visits and take medication. When applying the factors articulated by the Nebraska Supreme Court governing the likelihood of future harm, that is "the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships," we cannot say that the court erred in finding that the severity of the episode which took place on December 24, 2019, followed by the event on January 3, 2020, was sufficient to constitute a threat of future harm to Darcy. The severity of the sexual assault of December 24, 2019, as captured by the recording, followed by the incidents described on January 3, 2020, provide support for Darcy's testimony that "[DeWolf] has become increasingly abusive" and that "I know that [DeWolf] is angry and I am unsure of what he will do if he sees me again." Accordingly, we reject DeWolf's claim that there was no likelihood of future harm as the record establishes that the severity of the incidents which led to Darcy seeking the order was sufficient to find that DeWolf did not satisfy his burden of showing the abuse was unlikely to reoccur. Accordingly, we hold the court did not err in extending the protection order for 1 year following the court's initial domestic abuse protection order.

## CONCLUSION

The Nemaha County District Court's modified domestic abuse protection order is affirmed.

AFFIRMED.